# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **STERLING RAY BRICKEY, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.2:08CV00058 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICAHEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee*, Lee & Phipps, P.C., *Wise, Virginia, for Plaintiff; Beverly H. Zuckerman, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Sterling Ray Brickey, Jr. filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2009) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

Brickey applied for benefits on May 5, 2006, alleging disability since February 13, 2006. (R. at 39, 54.) This claim was denied initially and on reconsideration, and Brickey received a hearing before an administrative law judge ("ALJ") on September 12, 2007, and on February 7, 2008. (R. at 39-40, 331-94.) A vocational expert and the plaintiff, who was represented by counsel, testified. (R. at 331-94.) By decision dated March 20, 2008, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. at 14-23.) The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed and orally argued the issues, and the case is ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was thirty-four years old on the alleged disability onset date, making him a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 404.1563(c) (2008). He has a twelfth grade education. He worked as an ambulance attendant and an equipment operator, coal sampler, and utility worker for a coal company, but has not engaged in substantial gainful activity since February 13, 2006. He claims disability based on allergies, gastrointestinal problems, and degenerative disc disease with chronic low back pain. (R. at 22, 90, 99.)

The plaintiff was treated by Neal A. Jewell, M.D., from August 30, 2004, through February 24, 2006. (R. 132-37.) On August 30, 2004, the plaintiff complained of discomfort in the left lower back. (R. at 135.) Dr. Jewell performed a physical examination and determined that Brickey was not a candidate for surgical treatment. (R. at 135.) He recommended that Brickey continue at work without a change in restrictions. (R. at 135.) On February 3, 2006, Dr. Jewell saw Brickey for follow-up care, at which time Brickey reported that he was working at a prep plant which required minimal lifting, prolonged standing and walking, and some pulling. (R. at 134.) Brickey complained of increased low back pain and bilateral lower extremity pain, left greater than right, and bowel incontinence which Dr. Jewell did

not consider to be true incontinence. (R. at 134.) Dr. Jewell prescribed Lortab and recommended a lumbar MRI. (R. at 134.) An MRI of the lumbar spine was performed on February 13, 2006, showing minimal degenerative disc change at L4-L5 and L5-S1. (R. at 137.)

On the night of February 13, 2006, the plaintiff injured his back while lifting heavy objects at work. (R. at 17.) Brickey received emergency department treatment by Michael David Bess, D.O., for chronic low back pain the following day. A physical examination revealed muscle spasm in the lower back. (R. at 126.) Brickey was reported to be oriented times three, with normal mood and affect. (R. at 126.) Dr. Bess discharged Brickey with prescriptions for Motrin and Vicodin. (R. at 126.)

On February 24, 2006, the plaintiff saw Dr. Jewell, complaining of continued back and bilateral lower extremity pain, left greater than right. (R. at 132.) The plaintiff did not complain of bowel or bladder dysfunction. (R. at 132.) After physical examination and review of the lumbar MRI, Dr. Jewell noted no significant change from earlier studies and opined that Brickey had mild degenerative disc changes at L4-5 and L5-S1. (R. at 132.) Brickey was prescribed Mobic. (R. at 132.)

The plaintiff was seen by Jim C. Brasfield, M.D., from February 16, 2006, through May 2, 2006, in connection with his workers' compensation claim. (R. at 146-59.) On February 16, 2006, Brickey stated that he had been taking Lortab and

had been on restricted duties at work since a work injury in 2001. (R. at 157.) Dr. Brasfield reported that Brickey had palpable paraspinous lumbar spasm at the lumbosacral level, most likely a continuation of the lumbar problems he had since 2001. (R. at 158.) However, because of his more recent work injury, Dr. Brasfield ordered an MRI scan. (R. at 158.) He prescribed Lortab, Mobic, and Zanaflex, and instructed Brickey to remain off work for one week. (R. at 159.)

Brickey saw Dr. Brasfield for follow-up care on February 23, 2006, complaining of discomfort in his back and leg. (R. at 154.) Dr. Brasfield reviewed the MRI scan and reported degenerative disc disease with darkening and narrowing of the L4 disk at the fourth and fifth levels. (R. at 154.) He noted no changes on the MRI scan to suggest recent trauma. (R. at 155.) Dr. Brasfield instructed Brickey to begin lumbar rehabilitation and remain off work. (R. at 155.)

The plaintiff returned to Dr. Brasfield on April 3, 2006. (R. at 149-51.) Dr. Brasfield noted that other than increased intensity and right leg pain, Brickey's symptoms were the same prior to and after February 13, 2006. (R. at 149.) Dr. Brasfield stated that Brickey had no clear structural changes in his lumbar spine, and that he could return to work with a thirty pound lifting restriction. (R. at 150.) This was the same work restriction in place prior to the 2006 injury. (R. at 147.) On May

- 5 -

Case 2:08-cv-00058-JPJ-PMS   Document 19   Filed 07/23/09   Page 5 of 17   Pageid#: 82

2, 2006, Dr. Brasfield stated that the plaintiff had no definitive neurological deficit related to his work injury of February 13, 2006. (R. at 146.)

The plaintiff saw Gurcharan Kanwal, M.D., from April 12, 2006, through April 25, 2006. (R. at 139-44.) On April 12, 2006, Brickey complained of low back pain. (R. at 139.) Dr. Kanwal noted that Brickey had been sent back to work at the light exertion level by Dr. Jewell, and that he had a thirty pound weight restriction recommended by Dr. Brasfield. (R. at 139.) Dr. Kanwal reported marked tenderness in the low back, depression, and allergies. (R. at 140, 143.) He ordered an X ray of the lumbosacral spine, which showed no gross abnormality. (R. at 142.)

On June 2, 2006, the plaintiff saw Matthew W. Cusano, M.D. (R. at 313-14.) On physical examination, the plaintiff had tenderness in the lumbosacral area bilaterally and decreased sensation in the left lateral thigh. (R. at 313.) Dr. Cusano diagnosed the plaintiff with lumbar radiculopathy. (R. at 313.)

On June 30, 2006, Donald Williams, M.D., performed a residual functional capacity ("RFC") assessment. (R. at 160-66.) Dr. Williams found that Brickey could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour work day, sit for about six hours in an eight-hour work day, and that his ability to push and/or pull was unlimited. (R. at 161.) Dr. Williams also found that Brickey could climb, balance, kneel, and craw frequently,

and that he could stoop and crouch occasionally. (R. at 162.) No manipulative, visual, communicative, or environmental limitations were found. (R. at 162-63.)

On July 12, 2006, Luciano D'Amato, M.D., saw Brickey for complaints of constipation alternating with diarrhea for about one year. (R. at 176.) Brickey denied any psychiatric symptoms. (R. at 177.) On July 24, 2006, Dr. D'Amato performed a colonoscopy and the postoperative diagnosis was mild diverticulosis. (R. at 179.)

On July 27, 2006, B. Wayne Lanthorn, Ph.D., performed a psychological evaluation of the plaintiff. (R. at 225-34.) Dr. Lanthorn noted that Brickey was oriented and exhibited no signs of delusional thinking or ongoing psychotic processes. (R. at 228.) He described Brickey's mood as depressed and diagnosed him with major depressive disorder, single episode, severe; anxiety disorder; and pain disorder associated with both psychological factors and general medical conditions. (R. at 229, 233.)

Brickey scored in the low average range of current intellectual functioning on the Wechsler Adult Intelligence Scale with a full scale I.Q. of 84. (R. at 230.) Dr. Lanthorn reported his strengths as including rote and immediate memory functions, fund of general information gained from education and experience, and visual alertness to essential detail in the environment. (R. at 230.) Brickey was diagnosed

with borderline intellectual functioning and a global assessment of functioning ("GAF") score of fifty. (R. at 233.)

Dr. Lanthorn also reported the results of the Minnesota Multiphasic Personality Inventory - 2 ("MMPI-2"). (R. at 231.) Brickey's test results indicated that he was experiencing significant anxiety and severe depression. (R. at 231.) Dr. Lanthorn also found that Brickey had memory problems and difficulties with concentration. (R. at 232.)

On July 27, 2006, Dr. Lanthorn completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. (R. at 222-24.) Dr. Lanthorn indicated that the plaintiff had "good" ability to understand, remember, and carry out simple job instructions; "fair" ability to follow work rules, function independently, maintain concentration, understand, remember, and carry out detailed and complex job instructions, and maintain personal appearance; and "poor" ability to relate to co-workers, deal with the public, use judgment in public, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, relate predictability in social situations, and demonstrate reliability. (R. at 222-24.)

On November 16, 2006, Joseph Duckwall, M.D., performed an RFC assessment which confirmed Dr. Williams' earlier findings. (R. at 161-63, 168-70.)

The plaintiff was seen at Stone Mountain Health Services from January 2007 through May 2007. (R. at 316-24.) On May 1, 2007, Brickey was seen for complaints of increased back pain. (R. at 317.) A physical examination revealed that gait and station, range of motion, and sensation were within normal limits. (R. at 318.)

On May 9, 2007, Brickey had an MRI of the lumbar spine which showed mild broad based disc bulges at L4-L5 and L5-S1, without significant associated central canal or neural foraminal stenosis, and a small posterior annular tear at L5-S1. (R. at 212-13.)

On June 27, 2007, the plaintiff underwent a lumbar myelogram and post myelogram computer topography which revealed mild multilevel degenerative changes causing mild left neural foraminal narrowing at L4-L5 due to a small foraminal disc protrusion. (R. at 206-07.) On June 27, 2007, Brickey had nerve conduction studies of the left lower extremity, which were normal. (R. at 197-98.) A needle examination of the left lower extremity suggested a left L5 radiculopathy, and Ted M. Burns, M.D., the neurologist who reviewed the study, stated that clinical correlation was necessary. (R. at 198.)

The evidence in this case also includes the plaintiff's testimony regarding his subjective claims. (R. at 335-351, 360-385.) During the hearing, the plaintiff

complained of allergies, hip pain, and chronic low back pain which radiated down his left leg. (R. at 367-72.) He testified that he could not sit, stand or walk for more than ten to fifteen minutes. (R. at 333-385.) He alleged that his concentration was impaired. (R. at 367.) The plaintiff also testified that he had not received any treatment for depression or anxiety. (R. at 372-73.)

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing DIB claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present

in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2008).  If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases.  *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).  The fourth and fifth steps in this inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *See* 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2008).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard has been applied.  42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  If substantial evidence exists, the final decision of the Commissioner must be affirmed.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotes and citation omitted).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  It is not the role of this court to substitute its judgment for that of the Commissioner, as long as

- 11 -

substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff contends that the ALJ erred by failing to give full consideration to the findings of Dr. Lanthorn on the severity of Brickey's mental impairments and the resulting impact of those impairments on his work ability. I disagree.

The ALJ considered Dr. Lanthorn's conclusions and rejected them due to inconsistencies with the evidence in the file. (R. at 19.) The ALJ also found that Dr. Lanthorn's conclusions were based on one consultative examination, performed at the request of the claimant's disability representative. (R. at 20.)

Under the regulations, a treating source is defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had an ongoing relationship with the claimant. 20 C.F.R. § 416.902 (2008). A psychologist is not a treating source if the relationship "is not based on [the claimant's] medical need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [the claim] for disability." *Id.* In this instance, the record indicates that Dr. Lanthorn evaluated Brickey because he was referred by his attorney for an independent evaluation. (R. at 226.)

Because Dr. Lanthorn is not a treating source and his conclusions were based on one consultative examination, his opinion was not entitled to deference. *See* 20

- 12 -

C.F.R. § 404.1527(d)(2) (2008) (providing that more weight is generally given to the opinions of treating sources because these "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from . . . consultative examinations.").

Even if Dr. Lanthorn qualified as a treating physician, his opinions did not deserve controlling weight. The opinion of a treating physician controls only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2) (2008). If not controlling, the weight afforded to a treating physician's opinion depends on the extent to which the opinion "presents relevant evidence to support an opinion, particularly medical signs and laboratory findings . . . ." 20 C.F.R. § 404.1527(d)(3) (2008).

Dr. Lanthorn's opinions lack evidentiary support. Dr. Lanthorn diagnosed the plaintiff with major depressive disorder, single episodic, severe, and anxiety disorder. (R. at 233.) Yet, on February 14, 2006, a psychiatric evaluation by Dr. Jewell revealed that Brickey was oriented times three and that his mood and affect were normal. (R. at 126.) On July 12, 2006, Brickey specifically denied any psychiatric symptoms. (R. at 177.) Furthermore, Brickey testified that he had not received any

- 13 -

Case 2:08-cv-00058-JPJ-PMS   Document 19   Filed 07/23/09   Page 13 of 17   Pageid#: 90

treatment for depression or anxiety, and he denied any medical problems other than allergies and back, hip, and leg pain. (R. at 372-73.)

Dr. Lanthorn's opinions not only lack evidentiary support, but they also conflict with his own clinical findings. For instance, Dr. Lanthorn stated that Brickey's strengths included rote and immediate memory functions, fund of general information gained from education and experience, and visual alertness to essential detail in the environment. (R. at 230.) Dr. Lanthorn also reported that Brickey scored a full scale I.Q. of eighty-four on the WAIS-III, placing him in the low average range of intellectual functioning. (R. at 230.) Despite these findings, Dr. Lanthorn concluded that Brickey had short-term memory loss and diagnosed him with borderline intellectual functioning. (R. at 233.) Dr. Lanthorn's diagnoses were also inconsistent with his clinical findings that Brickey was oriented to person, place, time, and circumstance, and that he exhibited no delusional thinking or evidence of ongoing psychotic processes. (R. at 228.)

Accordingly, I find that there is substantial evidence to support the ALJ's decision that Dr. Lanthorn's opinion on the severity of Brickey's mental impairments was not entitled to deference.

- 14 -

The plaintiff also argues that the ALJ erred by failing to give appropriate weight to Brickey's testimony and properly assess the effect of pain on Brickey's ability to work. Again, I disagree.

When determining credibility of a claimant's testimony regarding his limitations, the ALJ's observations should be given great weight. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). The decision of the ALJ must be affirmed where there is substantial evidence to support such a decision. *Laws*, 368 F.2d at 642.

The plaintiff testified that he had pain in his back, could not sit, stand or walk for more than ten to fifteen minutes, and could not concentrate for long periods. (R. at 333-385.) The ALJ found that the plaintiff's allegations on the severity of his functional limitations were not totally credible for legally sufficient reasons.

Brickey's allegations were not supported by the results of a functional capacity assessment, which showed that Brickey was able to lift thirty pounds occasionally. (R. at 18, 288.) His allegations were inconsistent with Dr. Jewell's clinical findings and the diagnostic studies which he reviewed, including X rays and an MRI of the lumbar spine. (R. at 18, 132-37.) Brickey's testimony was not supported by the X ray of the lumbar spine obtained by Dr. Kanwal in April 2006, which revealed no gross abnormalities. (R. at 18, 142.) His allegations were also inconsistent with the normal nerve conduction studies and the post myelogram computer topography,

which showed mild multilevel degenerative changes causing mild left neural foraminal narrowing at L4-L5. (R. at 18, 197-98, 206-07.)

Furthermore, Brickey's allegations were inconsistent with Dr. Brasfield's opinion that he could return to work on April 4, 2006, with a thirty pound lifting restriction. (R. at 18, 150.) Brickey's testimony was also inconsistent with the opinions of Drs. Williams and Duckwall, who found that Brickey could perform light work with occasional stooping and crouching. (R. at 18, 160-73.)

Brickey's credibility was further decreased by inconsistencies between his allegations of mental impairments and the complete absence of any mental health treatment. (R. at 19-20.) *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir 1994) (noting that an unexplained inconsistency between the claimant's characterization of the severity of his condition and the treatment he sought to alleviate his condition was highly probative of the claimant's credibility). In addition, Brickey's allegations were inconsistent with psychiatric evaluations which showed that he was oriented times three, and that his memory, mood, and affect were normal. (R. at 19-20, 126, 318.) His allegations were not supported by the fact that he specifically denied any psychiatric symptoms in July 2006. (R. at 19-20, 177.)

The record shows that the ALJ considered all of the evidence—including objective clinical findings, physicians' reports, treatment, and functional limitations,

- 16 -

as well as Brickey's own testimony—before concluding that his allegations regarding his symptoms and limitations were not completely credible. (R. at 21.)

Accordingly, I find that there is substantial evidence to support the ALJ's decision.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

    DATED: July 23, 2009

    /s/ JAMES P. JONES
    Chief United States District Judge

- 17 -

Case 2:08-cv-00058-JPJ-PMS   Document 19   Filed 07/23/09   Page 17 of 17   Pageid#: 94